J-A11024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| H.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.S. | : | |
| | : | |
| Appellant | : | No. 1166 WDA 2022 |

Appeal from the Order Entered September 15, 2022
In the Court of Common Pleas of Cambria County Civil Division at No(s):
859 of 2021

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  September 7, 2023**

Appellant, D.S., appeals from the trial court's September 15, 2022 order denying his petition to vacate its final protection from abuse ("PFA") order for lack of due process and specific jurisdiction.[1]  We affirm.

On March 29, 2021, Appellee, H.S., filed a PFA petition against Appellant in the Court of Common Pleas of Cambria County.  In the petition, H.S. sought protection from abuse for herself and her minor daughter, L.S., who was two-years old at the time.  Petition for Protection from Abuse ("Petition"), 3/29/21, at ¶¶ 1, 3, 8.  H.S. averred therein that Appellant is her spouse or former spouse, and the father of L.S.  *Id.* at ¶¶ 5, 8.  H.S. also indicated that she and L.S. live in Nanty Glo, Pennsylvania, and that D.S. resides in Pemberville,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 23 Pa.C.S. §§ 6101-6122 ("Protection from Abuse Act").

Ohio. *Id.* at ¶¶ 1, 2, 8.[2] In addition, she provided the following information about the alleged abuse, which we produce *verbatim* except for the parties' names:

**10.** The facts of the most recent incident of abuse are as follows:

On about **Saturday, March 27, 2021** at approximately **8:00 PM** location: 304 **Bond St.**[3]

**I had gone out to his place to retrieve my things because he said I had 2 weeks to pick up my belongings or he was throwing them away. I have some family heirlooms and some of my daughters belongings that I needed to retrieve. [Appellant] had asked me to not bring anyone or contact the police to come with me. I was uneasy by this so I did ask a friend to drive me there for safety. [Appellant] had my belongings in a storage unit. I had called the Sherriff department in that local area to give his license plate and description in the event something happened because [Appellant] would not give me the address to the facility but insisted he meet me and I follow him there. I got my belongings and got back into the car and noticed [Appellant] still in the area. [Appellant] then started following us for approximately 10 miles in a direction opposite from his residence. I had then called [Appellant] to ask him to stop following us and he became defensive with me and he had a friend with him who started yelling at me over the phone and the friend then threatened to kill me and leave my body on the side of the road.**

**I did contact the Wood County Sherriffs Dept. in Ohio regarding this and was able to file for and Emergency PFA in Cambria County**

---

[2] Pemberville is located in Wood County, Ohio.

[3] H.S. conveyed elsewhere in the petition that this was Appellant's address at the time she filed the petition. *Id.* at ¶ 2.

**11.** Prior incidents of abuse that Defendant has committed against Plaintiff or the minor child/ren, (including any threats, injuries, or incidents of stalking) are as follows:

**Summer 2020 I contacted the police because he and his family were threatening to kill me and throw me in a ditch. They also made threats toward my daughter with physical harm and threats on her life.**

**Sexual abuse allegations of our 2 year old daughter from 2018 thru 2019 made by the baby sitter that is currently under investigation by NCIS**

**When I took our daughter to Indiana PA to visit with [Appellant] and he had physically struck our daughter so I took her home.**

*Id.* at ¶¶ 10, 11.

The same day that H.S. filed her petition, the trial court issued a temporary PFA order and scheduled a hearing for April 12, 2021. On April 7, 2021, an affidavit of service was filed by Wood County's acting sheriff, noting that service of the 'Notice of Hearing and Order, Petition and Temporary Order' was made by hand delivery to Appellant at his home address on the morning of March 31, 2021.

On April 12, 2021, the hearing occurred. Appellant did not attend. Following the hearing, on April 13, 2021, the trial court entered a final PFA order for a period of two years. That same day, it amended that order to state that all provisions entered in the March 29, 2021 temporary PFA order shall remain in effect.[4]

_____

[4] The trial court sent the final PFA order and a cost order to Appellant. However, that mailing was returned to the trial court, on the basis that it was unable to be delivered. Similarly, the trial court mailed the amended order to Appellant, but it was also returned as unable to be delivered.

Over a year later, on June 28, 2022, Appellant's counsel filed a praecipe for entry of appearance. Two months after that, on September 12, 2022, Appellant filed a "Petition to Vacate PFA For Lack of Due Process and Lack of Specific Jurisdiction." He claimed, *inter alia*, that he has no connection to Pennsylvania and that H.S. had to file the action in the state where the alleged abuse occurred, *i.e.*, Ohio. **See** Petition to Vacate, 9/12/22, at ¶¶ 26, 27.

On September 19, 2022, the trial court entered an order denying Appellant's petition to vacate. In support, it pointed to Pennsylvania Rule of Civil Procedure 1901.1, entitled "Venue." Rule 1901.1 states, in relevant part:

> (a) Except as provided in subdivision (b), an action for protection from abuse may be brought in a county in which
>
> (1) the plaintiff resides, either temporarily or permanently, or is employed, or
>
> (2) the defendant may be served, or
>
> (3) the abuse occurred.
>
> (b) If the relief sought includes possession of the residence or household to the exclusion of the defendant, the action shall be brought only in the county in which the residence or household is located.

Pa.R.Civ.P. 1901.1(a), (b). The trial court explained that, in H.S.'s March 29, 2021 petition, she listed an address in Nanty Glo, Pennsylvania, as her residence, and sought exclusion of Appellant from her residence there. Based on these facts, it determined that Appellant's petition lacked merit under Rule 1901.1.

Appellant filed a timely notice of appeal. That same day, he also filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b). The trial court later issued a Rule 1925(a) opinion, in which it relied on the reasoning set forth in its September 19, 2022 order denying Appellant's petition to vacate.

Presently, Appellant raises a single issue for our review:

Whether the facts in … [H.S.'s] PFA petition were sufficient to confer *specific jurisdiction* over [Appellant] under the Supreme Court's rationale in **International Shoe** [**Co. v. Washington**, 326 U.S. 310 (1945)].

Appellant's Brief at 3 (emphasis in original).[5]

Before we delve into Appellant's issue, we must address whether this appeal is moot, as the final PFA order expired on April 13, 2023. **See M.B.S. v. W.E.**, 232 A.3d 922, 927 (Pa. Super. 2020) (stating that we may address mootness *sua sponte*) (citations omitted). It is well-established that:

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

**Id.** (citations omitted). However,

[t]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. … [T]his Court has employed exceptions to the mootness doctrine to review issues stemming from expired PFA orders.

_____

[5] H.S. has not filed an appellee's brief.

*Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013) (cleaned up).

Here, Appellant's appeal meets the third exception to the mootness doctrine, as he will suffer some detriment due to the trial court's final PFA order. As this Court has recognized, "[a]t the very least, the present PFA order may be considered by the trial court in any subsequent PFA proceedings, as well as in any child custody proceedings." *N.H. v. M.E.*, 2019 WL 3780900, at *2 (Pa. Super. filed Aug. 12, 2019) (citing 23 Pa.C.S. § 6107(a)).[6] Further, "[i]t would also appear in a criminal history record check conducted by the Pennsylvania State Police." *Id.* (23 Pa.C.S. § 6105(e)(3)). Accordingly, because Appellant will suffer some detriment due to the final PFA order, we will not deem his appeal moot. *See id.*

On appeal, Appellant argues that "[t]he [t]rial [c]ourt's exercise of specific jurisdiction over [him] offends the traditional notions of [d]ue [p]rocess, fair play, and substantial justice." Appellant's Brief at 5. He says that "[n]othing under Pennsylvania's long[-]arm statute applied to give the [c]ourt jurisdiction, [Appellant] did not avail themselves [*sic*] to Pennsylvania [c]ourts, and there are no contacts by [Appellant] sufficient to give Pennsylvania jurisdiction over this matter." *Id.* at 14-15. He insists that, "[b]ecause all of the events that led to [H.S.'s] filing the PFA [petition] occurred in Ohio, the PFA [action] needed to be adjudicated under Ohio law

---

[6] *See* Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision filed after May 1, 2019, may be cited for its persuasive value).

in an Ohio [c]ourt." ***Id.*** at 6. Consequently, Appellant claims that "the Court of Common Pleas of Cambria County violated [his] right to [d]ue [p]rocess of [l]aw when it adjudicated the PFA [petition] filed by [H.S]. The lack of [d]ue [p]rocess voids the judgment entered by the [trial court] and the matter must be dismissed." ***Id.*** at 15.[7]

Initially, we note that, in general, an objection to personal jurisdiction must be raised in preliminary objections. Pennsylvania Rule of Civil Procedure 1028 provides:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> > (1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint….

Pa.R.Civ.P. 1028(a)(1). Further, Rule 1032(a) sets forth that:

> (a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule

---

[7] Appellant also claims that the trial court did not undertake a jurisdictional analysis, but instead wrongly focused on whether venue was proper in Cambria County. Appellant's Brief at 6. We agree, as jurisdiction and venue are distinct concepts. ***See Barr v. Bureau of Professional and Occupational Affairs***, 803 A.2d 243, 247 (Pa. Cmwlth. 2002) ("**Venue** is defined as '[t]he proper or a possible place for the trial of a lawsuit….' BLACK'S LAW DICTIONARY 1553 (7th ed.1999). **Jurisdiction** is defined, on the other hand, as '[a] government's general power to exercise authority over all persons and things within its territory….' ***Id.*** at 855. Venue and jurisdiction are distinguishable; venue relates to *where* judicial authority may be exercised, but more important, jurisdiction is the power to adjudicate.") (emphasis in original; citation omitted); ***see also Barrett v. M&B Medical Billing, Inc.***, 291 A.3d 371, 376 n.4 (Pa. Super. 2022) ("Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority.") (citation omitted).

1030(b),[8] the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

Pa.R.Civ.P. 1032(a).

Thus, it would appear that Appellant has waived his personal jurisdiction objection by not raising it in preliminary objections. However, we are aware that special rules apply to PFA proceedings. Specifically, with respect to PFA petitions, the Rules provide that "[t]he defendant **is not required** to file an answer or other responsive pleading to the petition or the certified order, and all averments not admitted shall be deemed denied." Pa.R.Civ.P. 1901.6 (emphasis added).[9] As such, because Rule 1901.6 suggests that Appellant was not required to file a responsive pleading, and because H.S. has not filed a brief offering a contrary argument, we will assume for purposes of this appeal that Appellant has not waived this issue by failing to file preliminary objections.[10] Accordingly, we proceed to the merits of his issue.

Section 6103 of the Protection from Abuse Act provides:

---

[8] Rule 1030(b) states that "[t]he affirmative defenses of assumption of risk, comparative negligence and contributory negligence need not be pleaded." Pa.R.Civ.P. 1030(b).

[9] We also note that "[a] protection order or approved consent agreement shall be for a fixed period of time not to exceed three years. The court may amend its order or agreement at any time upon subsequent petition filed by either party." 23 Pa.C.S. § 6108(d).

[10] Perhaps with more complete advocacy in the future, we would reach a different conclusion.

**(a) General rule.--**The court shall have jurisdiction over all proceedings under this chapter.

**(b) Effect of departure and nonresidence.--**The right of the plaintiff to relief under this chapter shall not be affected by either of the following:

(1) The plaintiff's leaving the residence or household to avoid further abuse.

(2) The defendant's absence from this Commonwealth or the defendant's nonresidence in this Commonwealth, provided that the court has personal jurisdiction over the defendant in accordance with 42 Pa.C.S. § 5322 (relating to bases of personal jurisdiction over persons outside this Commonwealth).

23 Pa.C.S. § 6103. Therefore, H.S.'s right to relief is not affected by Appellant's absence from and/or nonresidence in Pennsylvania, so long as the court has personal jurisdiction over Appellant in accordance with our long-arm statute, Section 5322.

With respect to Section 5322, this Court has observed:

Section 5322(a) contains ten paragraphs that specify particular types of contact with Pennsylvania deemed sufficient to warrant the exercise of specific jurisdiction. In addition, [S]ection 5322(b) operates as a "catchall," providing that jurisdiction may be exercised over persons who do not fall within the express provisions of [S]ection 5322(a) to the fullest extent permitted by the Due Process Clause of the United States Constitution. Regardless, if a defendant's activities in Pennsylvania only give rise to jurisdiction under [S]ection 5322(a) or (b), the plaintiff's cause of action is limited to those activities which formed the basis of jurisdiction. *See* 42 Pa.C.S.[] § 5322(c).

*N.T. ex rel. K.R.T. v. F.F.*, 118 A.3d 1130, 1134-35 (Pa. Super. 2015) (quoting *Mendel v. Williams*, 53 A.3d 810, 820-21 (Pa. Super. 2012); some brackets added).

In addition, we have noted:

- 9 -

> [E]ach of the ten subsections of [Section] 5322(a) [is] wholly subsumed within the catchall provision of [Section] 5322(b). Consequently, the only appropriate focus … is whether the minimum requisites of due process have been met, for if they have not, the various subsections of [Section] 5322(a) cannot statutorily authorize an unconstitutional exercise of *in personam* jurisdiction. If they have been met, any analysis of the subsections of [Section] 5322(a) would be superfluous.

*Id.* at 1135 n.5 (citations omitted; some brackets added).

As mentioned *supra*, "Pennsylvania courts have recognized that Section 5322(b) renders the reach of the long-arm statute coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment." *Id.* (cleaned up). Regarding the specific jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment, our Supreme Court has explained:

> [A]t its most simplistic, the question for specific personal jurisdiction continues to be whether the defendant has sufficient "minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316 … (internal quotation marks and citations omitted). Requiring minimum contacts satisfies due process by ensuring that the defendant may "reasonably anticipate" where it may be "haled into court" based upon which forums it has "purposefully avail[ed] itself of the privilege of conducting activities." *Burger King Corp. [v. Rudzewicz]*, 471 U.S. [462,] 474[ (1985)]. The High Court has opined that this requirement ensures that a defendant will not be subject to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475 … (internal quotation marks omitted).
>
> As Justice Sotomayor cited in her dissenting opinion in [*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017)], a preeminent treatise on federal practice and procedure observed that courts have synthesized the specific personal jurisdiction caselaw into a more manageable three-part test:
>
>> (1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?

(2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposely avail itself of the privilege of conducting activities therein?

(3) Would the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?[23]

> [23] To determine whether personal jurisdiction would be "reasonable and fair" under the third part of the test, courts will consider the following factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." **Burger King Corp.**, 471 U.S. at 477 … (quoting **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286 … (1980)) (internal quotations marks removed).

4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice & Procedure Civil §* 1069 (4th ed. 2015 & Supp. 2020) ("*Federal Practice & Procedure Civil*"); [**Bristol-Myers Squibb Co.**, 582 U.S. at 271-72] (Sotomayor, J. dissenting).

**Hammons v. Ethicon, Inc.**, 240 A.3d 537, 556-57 (Pa. 2020) (original brackets omitted).[11]

We consider Appellant's jurisdictional challenge unavailing. To begin, regarding the first two prongs of the above-stated, three-part test, Appellant's argument is premised on his insistence that he has had no contact with

---

[11] Further, when challenging the exercise of *in personam* jurisdiction, the moving party must support its objections to personal jurisdiction and, once it has done so, the burden of proving personal jurisdiction is placed upon the party asserting it. **N.T. ex rel. K.R.T.**, 118 A.3d at 1134 (citation omitted). In addition, "when deciding a motion to dismiss for lack of personal jurisdiction[,] the court must consider the evidence in the light most favorable to the non-moving party." **Id.** (citation omitted).

Pennsylvania. Appellant's Brief at 5. He says that "everything [H.S.] alleged occurred in Ohio, not Pennsylvania[,]" and insists that the "only link" to Pennsylvania is H.S.'s address. *Id.* at 6, 13. *See also id.* at 5 ("Can the purported victim of abuse that occurs in another state flee to Pennsylvania and obtain a [PFA] order, when [Appellant] has no contact with Pennsylvania?"); *id.* at 10 ("Further from [H.S.'s] complaint[,] all the things occurred in Ohio, no tortious conduct occurred within Pennsylvania."). Problematically, the record does not support the premise of Appellant's argument, and we therefore cannot accept his claim that the court lacked jurisdiction over him because H.S.'s petition shows that he has had **no** contact with Pennsylvania.

Instead, our review of the record supports that Appellant has had contact with H.S. and L.S. **in Pennsylvania**. In H.S.'s petition, she alleged a prior incident of abuse where she took their daughter, L.S., to visit with Appellant in Indiana, Pennsylvania, and he physically struck L.S., prompting H.S. to take L.S. home. Petition at ¶ 11. While H.S. did not aver when this incident took place, we reiterate that L.S. was only two-years old at the time the petition was filed and, as such, this incident could not have happened very far in the past. Appellant does not address this specific incident at all, nor does he explain how his coming to Pennsylvania — and seeing L.S. and H.S.

— affects Pennsylvania's jurisdiction over him.[12]  We decline to conduct this jurisdictional analysis on his behalf.  **See Commonwealth v. Frey**, 41 A.3d 605, 613-14 (Pa. Super. 2012) ("It would be improper for this Court to act as counsel for a party.  That is, we must not write a party's brief and develop the analysis necessary to support the party's position.") (citations omitted).

Moreover, as for the third prong of the three-part test, whether the exercise of personal jurisdiction over Appellant in Pennsylvania is reasonable and fair, Appellant proffers no developed argument on this point.  Despite listing the factors that courts are to consider when ascertaining whether personal jurisdiction would be "reasonable and fair," **see** Appellant's Brief at 12-13, he does not meaningfully discuss any of them.  **See Hammons**, **supra** ("To determine whether personal jurisdiction would be 'reasonable and fair' under the third part of the test, courts will consider the following factors: 'the

---

[12] Appellant generally argues that "any allegation of abuse concerning the parties' minor child cannot be used to bootstrap jurisdiction.  Clearly the allegations that give rise to the PFA [order] involve an incident between two adults.  The allegations that give rise to the PFA [order] do not involve the parties' minor child."  Appellant's Brief at 13-14 (footnote omitted).  We disagree.  The allegations that gave rise to the PFA order did involve the parties' minor child, and H.S. requested protection for both herself and L.S. therein.  **See** Petition at ¶¶ 3, 4, 11.  Further, to the extent that Appellant claims lack of notice that L.S. was involved, **see** Appellant's Brief at 14 n.2, we note that the petition, notice of hearing, and temporary order were hand delivered to Appellant at his home address on March 31, 2021.  The caption of the Notice of Hearing and Order stated "[H.S.] individually and on behalf of minor[,]" and the trial court included L.S. as a protected person in its temporary order.  Notice of Hearing and Order, 3/29/21.  Further, H.S.'s petition was captioned "[H.S.] Et. Al.[,]" and stated that she and L.S. sought protection from abuse.  **See** Petition at ¶¶ 3, 4.

burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'").  Instead, he merely states:

> Applying these principles to the case at bar[,] it is clear the Cambria County Court of Common Pleas lacked jurisdiction to hear this matter.  From the allegations in the PFA [petition] and the motion to vacate, it is a dispute between ex-husband and ex-wife over an incident that occurred in Ohio.  [Appellant] did not avail themselves [*sic*] to Pennsylvania [l]aw and could not reasonably be held to expect being [haled] into [c]ourt in Pennsylvania.  It is not fair for a Pennsylvania [c]ourt to exercise jurisdiction over the matter especially when all of the witnesses and other evidence is located in Ohio.  The only link to Pennsylvania is [H.S.'s] address.

Appellant's Brief at 13.

"When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted).  Further, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." *Id.* (citation omitted).

Appellant has failed to meaningfully discuss the relevant factors, and we again decline to conduct this analysis for him.  As such, he has not convinced us that Pennsylvania's exercising jurisdiction over him is not fair and

- 14 -

reasonable under the circumstances. Based on the foregoing, we affirm the trial court's order denying Appellant's petition to vacate.[13]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2023

---

[13] While we affirm the trial court's order, we acknowledge that our reasoning differs from the rationale used by the trial court. Nevertheless, "this Court is not bound by the reasoning of the trial court, and we may affirm the trial court's order on any valid basis." ***Dockery v. Thomas Jefferson University Hospitals, Inc.***, 253 A.3d 716, 721 (Pa. Super. 2021) (cleaned up).